May it please the Court, I'm Dennis Falski and I represent Mr. Steitiye. For 40 years, the courts have excluded evidence obtained by law enforcement officers through violations of the constitutional rights of defendants. That was our decision in Wong Son and that's become known as the Food of the Poisonous Tree Doctrine. And 19 years ago, Chief Justice Berger made a couple important points about that exclusionary rule. The first one was it's not limited to only Fourth Amendment violations. The second thing was that he explained the core policy behind it. He stated, quote, this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. What case are you quoting from? I'm sorry. What case are you quoting from? This is from NICS. And it's from page 26 and top of 27 of my brief. And it's on this rationale, the prosecution's not to be put in a better position than it would have been if no illegality had transpired. Now, the government says Isn't the issue here really, it's not that taking the picture or using the picture and showing to somebody it's a due process violation. It's that the evidence may not be worth much. And the ultimate conclusion with regard to the introduction at trial is essentially that under certain circumstances, it's a due process violation to rely on this evidence because it essentially, we know from experience, isn't worth much. So is the real question whether this kind of evidence that is unreliable or single photo ID evidence, if we think it's sufficiently unreliable, is simply not usable to support probable cause, sort of like an anonymous informer or something like that? No, you're close. But I think the question is one step further. I think the government's position and what you're thinking is from the viewpoint of, does the unnecessarily suggestive kind of identification procedure in and of itself violate due process? And we've never taken that position. The position that we're taking, and there's an extra step in there, is when you look at Neal v. Biggers and you look at the totality of the circumstances, there's a second prong that you have to meet before there's a due process violation. And we meet it in this case. And that is, is there a danger of the irreparable mistaken identification? That's always the question that's being asked in the trial context because you don't really know if you've got the right person or not. But here, it's established that we have mistaken identifications. We have a completed due process violation because they've been used. And you can determine a due process violation, but why does that help anything? I mean, in other words, what you have is a situation where perhaps there ought to be a rule, I don't know that there is one, that for probable cause purposes, you can't rely on single photo IDs. But why is that a due process violation? Well, the due process violation occurs from the unconstitutional conduct, using the suggestive identification procedure and obtaining irreparable mistaken identifications. That's the unconstitutional conduct. Just as when officers go in and ---- If it's irreparable, then you don't use it. We can't just say it's no good. We're not going to use it. You ignore it. You can't use it just as you couldn't use the evidence at trial or just as when there's an unconstitutional search. Well, that's the step that I would like to explore because it's true that if there is a defective identification through a single photo, you may not be able to use it at trial. But I'm unaware of any authority that says you can't use it to obtain a search warrant. And there's no authority on the other side. My point is ---- Well, won't you have to establish the authority? I don't think so. What would be the reason why that should apply to an affidavit for a search warrant? For the same reasons that Justice Berger says we have the fruit-of-the-poisonous-tree doctrine. That's to not give the prosecution an advantage for their illegal conduct. And what you do here ---- But what is the illegal conduct? Showing somebody a picture of somebody else is not illegal conduct, right? It's impermissibly suggestive. So, therefore, they can't ---- there may be a problem if they try and use any of those witnesses. But showing the picture is an illegal conduct. But obtaining an irreparable mistaken identification, I think, violates due process. If I'm using the word illegal, I mean I'm using it too loosely. But only if they want to use it for something. And they did. They used it to obtain a search warrant and to get into his home. And so just because you have an in-between step of sticking it in a search warrant, then going into his home, and then giving the evidence ---- But don't we have a finding that it wasn't deliberate misconduct here? There is no allegation that it was. Yeah. I mean, there wasn't a deliberate misconduct. Right. We argue that it wasn't good faith. But there's no argument of deliberate misconduct. Well, how does that fit with the doctrine of exigent circumstances? Because your proposition seems to be that as a matter of law, before you can get a search warrant based on identification, you have to have six pictures that all are people who all look approximately alike, which could take a long time. Well, there's no ---- that I am aware of, there's no exigent circumstance exception that applies to photo IDs. I've not seen any case law on that. And the matter is ---- Well, I'm just saying, do you ---- If they say we didn't have time to get to do it, we were afraid that something was going to happen, we didn't have time to do a photo ID this way, so we conducted a warrantless search. You don't want to argue that, do you? No. And I ---- and where your position takes you is similar to the good faith argument that the government is trying to make here. All right. Let's say we bought your theory. Then where do we go? So then we go to the question of whether, as I understand it, then where you go next is to the question of whether or not the ---- there would have been a search anyway. An application for a search warrant anyway. And there was a finding that there would have been. Right. And your position is that that's we could overrule, we could disagree with the district judge? No. There's an additional step. All right. So you're not arguing against that first step. We're not arguing. So now we're to the next step, which is whether or not there was probable cause without this. That's correct. And that's the same place you would get if you went at it my way, right? Because what you would do as a practical matter, you would still just take out the non-reliable evidence and say was there evidence on which to get a search warrant. So it hardly matters in this case which way you do it. Am I right about that? Yeah, you are. I mean, the practical effect, either any way you go about it, the practical effect is you then take it out and look and see, do you have probable cause? Okay. So this theory in a way doesn't matter. What matters is if one way or another what you want us to do is take out this evidence and look at what's left. So what really matters ultimately in this case is tell us why without that evidence there was probable cause. Sure. Without the evidence, what we have is an allegation that the man had a Form 4473 at his apartment and that it was probable to believe that it would have been there. But it was seven weeks after he took it. It would be counterintuitive in the first place to keep it, since the reason you would take it would be to cover up the fact that you had lied when you filled out the form. And then this court in Graney has said that there are two factors you look at in determining whether that warrant would be stale seven weeks later, whether there would still be probable cause. One of them is whether there's been a completed crime or an ongoing criminal enterprise. And in this case, it had been completed on the day he tried to buy it. And the second factor in Graney is that... Well, no, that's not quite true, is it? Since he kept the form? That it wasn't a completed crime? Keeping it or not keeping it is irrelevant to whether he lied or not. He probably kept the receipt, too. I mean, they did in fact find the receipt. He gave his phone number. He used his American Express card. Nothing was done to try to hide the transaction, so to speak. And the second Graney factor, I have to look to remind myself. But in fact, wasn't the time delay here just way less than in any of Graney or any of his progeny or friends? It was. But seven weeks to still have something that, again, as in Graney they say, one of the factors you take into account is if the person's alerted that the police are going to be called. But he did have the receipt. In fact. Yeah. But... I mean, he was trying to hide something, presumably. I mean, the only thing he could have been trying to hide is whether he was the guy they claimed he was. The hiding would have been to hide the fact that the crime is lying on the form. Right. To hide the crime, you have to hide the form. He knows he can't hide everything else because he's given his American Express card. He's openly given his name, his telephone number. I mean, suppose somebody... That's how he called them up. Suppose somebody was suspected of committing a murder and they called them up and said, you know, we think you have X gun, and he says, oh, I don't have that gun anymore. Is that a reason not to go look for it? No. That's a different situation. Well, why would he keep it if he committed the murder? You want to get rid of it? Counsel, you have to answer briefly because your time has expired. All right. I can't answer that in 10 seconds. All right. Thank you. Time has expired. We'll give you a minute on rebuttal if you wish to.  I'm Gary Sussman, appearing on behalf of the United States. The sole issue in this consolidated appeal is whether the district court properly denied the identical motions to suppress that defendant filed in each of these cases. The answer to that question is yes. Now, in arguing for suppression, the defendant has tried to cobble together bits and pieces of various legal doctrines and theories, due process, fruit of the poisonous tree, independent source rule, to try and come up with some viable reason to argue for suppression of the entire search warrant in this case. But none of those doctrines directly apply here. The due process interest protected by the suppression of suggestive identification evidence has been described by this Court as an evidentiary interest. But there's an evidentiary interest here, too. I mean, the question is, is this evidence, good evidence on probable cause? It is. There's a proceeding. The warrant, the magistrate had evidence. And there is certainly an evidentiary question as to whether this sort of suggestive ID is going to be recognized as a piece of a probable cause determination. I don't know if there's any law on it, but that's a separate issue, isn't it? There are. I'll try and answer all those questions. It is a separate issue. There is no law on it. And we have to keep in mind what the standard is for issuing the search warrant, and that is a probable cause standard, not a standard of proof beyond a reasonable doubt, not a standard of is everything in the affidavit going to be admissible at trial. It's whether or not the affidavit says for it. But we, for example, don't recognize anonymous informants as establishing probable cause. Not without some corroboration. That's just a rule that's developed over time about what's adequate evidence to establish probable cause. And one can imagine. I mean, this case is quite sobering about the usefulness of this kind of identification here. We had three or four different people looking at photos of two different people and squaring they were there when they weren't. And at the time that they made those identifications, the officers had probable cause to believe that those people had been involved in that incident. Just as if a person, a reliable citizen witness sees a crime and reports it to the police, and the officer responds and takes the report. And that citizen. But it's not the same because it was the officers who generated the ID by going and doing it this way instead of some other way. So all I'm saying is that one can imagine a rule developing, and it might be a sensible rule, that says you cannot use these sorts of single photo IDs without some good reason, especially when you're violating the policy of the agency, to establish probable cause. That wouldn't be a due process violation. It would simply be that it's not relevant evidence or not usable evidence to establish probable cause sitting by itself. But there is no authority for that out there. Is there authority to the contrary? Pardon me? Is there authority to the contrary? Not directly. But this Court has held in an analogous context that statements obtained in violation of Miranda, though not admissible in the government's case in chief, still may properly be included in a search warrant affidavit and still may properly be relied upon in establishing probable cause. If it later turns out that the identifications were mistaken, as it was in this case, it may well be that the government can't use that identification evidence at trial. It may well be that there will be no trial at all. And, in fact, in this case, there was going to be no trial at all. But there was a proceeding before the magistrate in which this was used. That's true. And that information was all laid out in the affidavit for the magistrate to see. There has never been a suggestion that the agent tried to pull the wool over the magistrate's eyes or tried to suggest that it was a six-picture throwdown or tried to do anything other than lay out what it was, which were the use of single photographs. Would I have preferred to see a six-picture throwdown? In retrospect, no question about it. In retrospect, I think the agent realizes that it was the wrong thing to do. If it makes any difference, the agent that did it the first time was a DEA agent, not an ATF agent. But still, it was the wrong thing to do. But the result was that the agents had, at that moment, based on all the information then available to them, probable cause to believe that these people were involved in this incident. And that information properly went into a search warrant affidavit. All right. Well, let's assume, as we assumed before, that we got by this and we were And I gather that there's now been a concession, which I didn't realize, that there's no issue about whether the search warrant would nonetheless have been sought. So the only issue then ultimately is whether, if you accepted the defendant's version, would be whether there is probable cause on the remaining allegations if we took this out. So can you address that, please? The district court found that there would be probable cause to search the residents, but not the vehicles, for evidence of the firearm transaction. And that is a critical point that the defendant has consistently overlooked throughout his briefing and throughout his argument this morning. The search warrant was for more than just the single piece of paper that is the ATF form. The district court found that it would be reasonable to look in the residents for evidence concerning the firearm transaction, which included the purchased documents. And, in fact, when the agent served the search warrant, as the court has already noted, they found the refund slip in his apartment, in his bedroom, in the trash can. It's entirely reasonable to believe that somebody is going to hold on to documents pertaining to a credit card purchase for some reasonable period of time. And seven weeks for documents involving a credit card purchase is not an inordinate lapse of time. It's far less than a lot of the lapses that this court has upheld in other cases, which have ranged from two months when looking for money from a bank robbery to two years in the Greeney case, which Mr. Balski has cited to you. That was the marijuana growing case. Here we're talking about documents that you would reasonably expect someone to hold on to, at least for some period of time, if for no other reason, to make sure that he was properly credited back on his credit card purchase. All right. So if that were so, would that cover everything that was found, i.e., I mean, I gather there was some stuff found under the bed, and there was these notebooks, and so on. I mean, would your position be that everything that was found was found in a legitimate search for this piece of paper, although they never found it? Well, there again, it goes beyond just a piece of paper. It goes to records of the transaction. It was for firearms and firearms-related items, and they found a number of those. And there was allowed for the search for documents proving dominion and control over the premises. And I think that under the plain view doctrine, the officers were legitimately there, pursuant to a facially valid search warrant. They were looking for those items. Why were they looking under the bed? I mean, there may be an explanation for that. Didn't they find some suitcase under a bed and then open up the suitcase? They found a briefcase under a bed in which was $20,000 in cash and $2,000 bundles and some personal papers. But those personal papers in there could have included the documents relating to the gun transaction. So they had every right to look in that briefcase for those types of documents. And when they found that stuff in there, it was within the plain view doctrine as developed in Coolidge v. New Hampshire and his progeny. Do you want to briefly talk about the overbreaths of the warrant issues? I will. You're going to revise your sentence. Whatever that sentence was, it was incoherent. Well, it wasn't the most artfully worded paragraph, but it got the message across. He's challenging one paragraph out of three among the items that could be searched for and seized. And his challenge to that one paragraph is essentially limited to where in the paragraph the words concluding but not limited to appear. He complains that that language precedes any descriptive language and that gives carte blanche to the officers to search for and seize any document anywhere in the apartment. I believe he called it anything but the kitchen sink. But in doing that, he's really elevating form over substance. And he's ignoring this Court's admonitions that search warrants are to be read in a common sense fashion and understood in a non-technical manner. Now, applying that standard, the district court found it clear that the agents were there to search for firearms and other gun-related property, the missing ATF form, other records of firearms transactions and ownership, and records showing ownership and control of the premises. That is precisely the understanding that the agents had. And one agent testified to that very thing at the suppression hearing. And the fact that the agents found and seized a variety of other documents does not mean that the search warrant itself was overly broad. In fact, the challenge language in this search warrant is quite similar in a lot of respects to the language that was upheld by this Court in the case of United States v. Reeves, in which the upheld search warrants that allowed for the seizure of items that, quote, may include but is not limited to the following, methamphetamine, a controlled substance, packaging material, scales, other items related to the manufacturing and distribution of controlled substances, and in particular, methamphetamine. There wasn't some general limiting language before that in that case? No. The limiting language in that case came after the words may include but is not limited to. And then the words and other items related to preceded the limiting language as well. And here we've got limiting language immediately after the words including but not limited to, and that language is any inventory list of any firearms traded, sold, or acquired by cash or any other means of payment, and an ATF form 4473 signed by Ali Khaled Stady. And in addition, that paragraph comes after another paragraph which specifically says the object of the search is firearms, firearms related to the area. I have a question on a little different subject. You mentioned a facially valid search warrant. Suppose that the search warrant was improperly issued because of the reasons argued by the defendant. Would an argument made that the good faith execution by the officers of a facially valid search warrant under Leon would have been permissible? I suppose it depends on what made the warrant facially invalid. If it was that the warrant was overbroad, well, there are cases that say that facially overbroad warrants cannot be saved by the good faith exception. If it was something that turned out to be a very technical, very narrow thing, that a reasonably trained police officer would not have spotted and that a United States magistrate judge didn't spot, I think the good faith exception would apply. Well, like photograph. Well, I think that the good faith exception would apply there because the agent did not do anything to mislead the magistrate, did not suggest that it was anything other than the use of single photographs. The magistrate saw that and issued a warrant believing that that constituted probable cause anyway. Were the same persons that executed the warrant the ones who obtained the photo? I believe both of them were, yes. That would have an effect. Thank you. Thank you. Thank you. I guess I'll then address the overbreadth position very quickly, which is that the government's position, for instance, in their brief when they cite Washington and they say, well, In this case, there's no reference before the overbroad language anywhere. It never says involved. What about Reeves? Is Reeves as a representative? I'm sorry. Is Reeves as it is represented? The Reeves case. I believe it is. As I describe it. I believe it is. So it is the same. So Reeves is basically the same assistant. As Mr. Spaty? Yes. I don't believe it is. Because? I don't believe it is because I believe that it has more specificity up before the including, but not limited to. I don't have it in front of me, and I could be wrong. But that's my recollection is that the two don't match up. In addition, the other point that I think the Court needs to look at, that the Court inquired into when there was discussion of plain view, is the fact that what we have is a separate ten-count indictment that stems from discovering evidence of fraud crimes, all of which was seized during the execution of this warrant. That's consistent with our position that it was overbroad and allowed them to search for anything that they wanted to search for. The other position that I'd like to point out to the Court with respect to the magistrate judge which goes back to the first issue, and I'll very briefly. Your time has expired. I'll let you finish the sentence. I'm looking at 32, and I was thinking I had 32. It's minus. I'm going to have 33 over. I won't. Thank you very much. All right. Thank you. The case was argued as subpoenaed for decision.
judges: Schroeder, Hug, Berzon